IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 17, 2016 Session

## LISA E. BURRIS v. JAMES MORTON BURRIS

**Appeal from the Chancery Court for Rutherford County**
**No. 060346DR      Mitchell Keith Siskin, Judge**

_____

**No. M2015-01969-COA-R3-CV – Filed September 20, 2016**

_____

Appellant appeals from the denial of her motion to alter or amend the trial court's judgment finding her guilty of thirty-seven counts of criminal contempt and sentencing her to 403 days incarceration. We affirm the trial court's denial of Appellant's post-trial motion on the ground that the trial court erred in finding her non-payment of child support willful. We also affirm the denial of Appellant's post-trial motion based upon evidence that Appellant obtained a loan to pay her support obligation after the contempt hearing. We vacate the trial court's denial of Appellant's post-trial motion, however, on the ground that trial court failed to consider whether Appellant's sentence was excessive. We therefore remand to the trial court to make appropriate findings of fact and conclusions of law to support its ruling and to consider whether Appellant's sentence is excessive. Affirmed in part; vacated in part and remanded.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Chelsea Nicholson, Nashville, Tennessee, for the appellant, Lisa E. Burris.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the appellee, James Morton Burris.


## OPINION

The parties, James Morton Burris ("Father") and Lisa E. Burris ("Mother), were divorced by order of the Rutherford County Chancery Court on December 11, 2008. On the

same day, the trial court entered a parenting plan related to the parties' three children.[1] Father was named the children's primary residential parent, and Mother was awarded every-other-weekend parenting time with the children. Mother was ordered to pay $525.00 per month to Father in child support and one-half of all uncovered reasonable and necessary medical expenses incurred on behalf of the children. Father was also awarded a judgment for a child support arrearage in the amount of $18,882.00. Finally, Mother was ordered to obtain a life insurance policy in the amount of $300,000.00 and to name Father as beneficiary.

The parties engaged in extensive post-divorce litigation, and the trial court eventually entered an amended parenting plan on December 4, 2009. Under this plan, Mother's parenting time was increased, and her child support obligation was reduced to $484.00 per month. Mother was also ordered to pay $100.00 per month toward her outstanding child support arrearage. On November 27, 2012, the parties entered into an agreed order again modifying Mother's child support obligation. Under this order, her child support obligation was increased to $563.00 per month based upon the Rutherford County Child Support Office's calculation. Mother's arrearage was set at $2,425.61, which was to be reduced by an income tax refund intercept in the amount of $1,300.00. The parties further agreed that Mother owed Father $1,733.53 for her portion of the uncovered medical expenses incurred by the children through November 8, 2012. The order further indicated that Mother would pay the total amount due to Father immediately after the entry of the order.

The parties' acrimonious relationship with regard to parenting time and child support continued unabated. Eventually, Mother filed a petition to modify the parties' parenting plan, which she amended on March 21, 2013. One year later, on March 21, 2014, Father filed a motion to find Mother in criminal contempt for her "habitual[]" failure to pay one-half of the children's medical expenses and child support. Father alleged that despite having the present ability to pay for uncovered medical expenses and child support, Mother failed to pay $2,277.00 in child support and $544.74 in uncovered medical expenses as ordered by the trial court.

The trial court held a hearing on Mother's amended petition to modify the parenting plan and Father's petition for criminal contempt on May 16, 2014. The trial court partially granted Mother's modification petition and found Mother guilty of four counts of criminal contempt. Mother was ordered to serve forty days in jail, with twenty of those days suspended. Although an order on the criminal contempt petition was not entered until June 2, 2014, Mother began serving her jail sentence immediately on May 16, 2014. On May 21, 2014, Mother filed an emergency ex parte motion to alter or amend the trial court's judgment. Mother alleged that her incarceration threatened her newly acquired employment, making it impossible for her to pay support and that the trial court was required to consider a less drastic alternative. Although no order was entered on Mother's motion, it appears from

---

[1] One of the children has now reached majority.

the record that Mother was released from incarceration on May 23, 2014, after serving only seven days of her twenty-day suspended sentence. On August 15, 2014, a child support magistrate entered a temporary order reducing Mother's child support obligation to $457.00 per month. The trial court confirmed the order of the child support magistrate on April 24, 2015, more than eight months after the child support magistrate entered its order.

Father filed another criminal contempt petition on September 25, 2014. Therein, Father alleged that Mother refused to return one of the children to his custody pursuant to the parenting plan. Father asked that Mother be found in criminal contempt, that her previously suspended sentence be reinstated, and that she be ordered to serve the remainder of the sentence. On October 28, 2014, Mother filed a second petition to modify the parties' parenting plan and her child support obligation, asserting that her employment had recently been terminated. Mother therefore asked that her child support obligation be modified to take into account her lack of income and that uncovered medical expenses be divided pro rata, rather than equally.

Mother filed her own criminal contempt petition on November 3, 2014, alleging that Father violated the parties' parenting plan by making harassing and derogatory comments to Mother regarding her failure to pay uncovered medical expenses. On March 30, 2015, Father filed an amended petition for criminal contempt against Mother, raising additional allegations that Mother had failed to pay child support and uncovered medical expenses.

The trial court conducted a hearing on Father's amended petition for criminal contempt on May 26, 2015, wherein the trial court found mother guilty of several counts of criminal contempt and sentenced Mother to incarceration. Mother began serving her sentence immediately on May 26, 2015. On June 18, 2015, the trial court entered an order finding Mother in contempt for seventeen counts of willful failure to pay certain medical bills from 2014, twelve counts of willful failure to pay certain medical bills from 2015, one count for willful failure to allow Father visitation, and seven counts of willful failure to pay child support from November 2014 until May 2015. Mother was ordered to serve ten days per count, "consecutive to each other and consecutive to the suspended sentence hereby revoked" for a total of 403 days.

Mother filed a motion to vacate the order on July 8, 2015. Mother submitted that, prior to the hearing on Father's petition, she had made arrangements to bring her child support current by securing a loan from her sister. Mother attached exhibits including loan documents and a promissory note to her sister. The trial court conducted a hearing on the motion to vacate on August 7, 2015, and denied the motion by order entered on August 28, 2015. The trial court also ordered Mother to pay Father's attorney's fees.

Mother appealed this decision on September 23, 2015. Mother did not file a motion in the trial court to stay the judgment pending appeal. Instead, on November 16, 2015, Mother

filed a motion in this Court to set an appeal bond or to be released on her own recognizance pending appeal. On November 18, 2015, this Court granted Mother's motion and stayed the remainder of Mother's sentence pending appeal. At the time Mother was released, she had served approximately 176 days in jail.

## Issues Presented

Mother raises one issue on appeal, namely: Whether the trial court erred in denying her motion to vacate its order finding Mother in contempt. Additionally, Father asks that he be awarded attorney's fees incurred in defending a frivolous appeal.

## Discussion

Mother raises only a single issue in this appeal: whether the trial court erred in refusing to grant her "motion to vacate" pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure.[2] Here, Mother filed her motion to set aside the trial court's judgment less than thirty days after it was entered. Accordingly, her motion was properly brought under Rule 59.04,[3] rather than Rule 60.02. *See **Discover Bank v. Morgan**, 363 S.W.3d 479, 489*

---

[2] Rule 60.02 provides:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

[3] Rule 59.04 provides that "[a] motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment."

(Tenn. 2012) (characterizing a Rule 60.02 motion as one where a party "seek[s] relief [] more than thirty days after entry of a final judgment"); *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60] is to give relief from final judgments; Rule 59 . . . is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet become final."); *Stricklin v. Stricklin*, 490 S.W.3d 8, 18 (Tenn. Ct. App. 2015) ("Because [father's] motion was filed within thirty days from the entry of the June 3 order, we regard his motion as a request for relief under Rule 59.") (citing *Campbell*, 555 S.W.2d at 112); *see also Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) ("Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment."). *But see Smith v. Haley*, No. E2000-001203-COA-R3-CV, 2001 WL 208515, at *5 (Tenn. Ct. App. Mar. 2, 2001) ("[Rule 59.04] applies to final judgments."). Indeed, in her reply brief to this Court, Mother admits that her motion to vacate was, in substance, a Rule 59.04 motion to alter or amend. We will therefore consider whether Mother was entitled to relief under Rule 59.04.

As we explained in *In re M.L.D.*, 182 S.W.3d 890 (Tenn. Ct. App. 2005):

> The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final. *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (overruled in part on other grounds by *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice. *Id.* A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments. *Local Union 760 of Intern. Broth. of Elec. Workers v. City of Harriman*, No. E2000-00367-COA-R3-CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec. 8, 2000) *perm. app. denied* (Tenn. May 14, 2001), *see Bradley*, 984 S.W.2d at 933 (holding: a Rule 59 motion should not be used to raise new legal theories where motion for summary judgment is pending).

*M.L.D.*, 182 S.W.3d at 895. We review a trial court's decision on whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003).

As we perceive it, Mother raised three grounds for relief in her motion to alter or amend the trial court's judgment and on appeal to this Court: (1) that the trial court erred in

finding that Mother's failure to pay child support and uncovered medical expenses was willful; (2) that the trial court should have considered Mother's newly presented evidence that she could become current on all of her child support obligations due to renewed employment and a loan from a family member; and (3) that the trial court's judgment was excessive and therefore caused an injustice or constituted a clear error of law. We will consider each ground in turn.

## I.

We first consider Mother's argument that the trial court erred in finding her failure to pay child support willful. As an initial matter, we note that despite the clear directive of Rule 27 of the Tennessee Rules of Appellate Procedure that arguments be accompanied by citations to relevant legal authority, Mother's brief contains no legal authority regarding this particular issue. *See* Tenn. R. App. P. 27(a)(7)(A) (requiring that arguments contain "citations to the authorities"). Despite this omission, we agree with Mother that in order for the trial court to have found Mother in criminal contempt, her failure to follow the court's directives must have been willful. *See Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000) ("An act of contempt is a wilful[4] or intentional act that offends the court and its administration of justice.") (citing Tenn. Code Ann. § 29-9-102).[5] In the context of a failure to pay child support or uncovered medical expenses, in order for Mother's failure to be willful, she must

---

[4] According to *Garner's Dictionary of Legal Usage*: "Willful is the preferred spelling in [American English]." Bryan Garner, *Garner's Dictionary of Legal Usage* 948 (3d ed. 2011). In contrast, the spelling "wilful" is preferred in British English. *Id.* Accordingly, we will use the term "willful" throughout this Opinion.

[5] Tennessee Code Annotated Section 29-9-102 provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
> (6) Any other act or omission declared a contempt by law.

have had "the ability to pay child support at the time it was due." ***Cottingham v. Cottingham***, 193 S.W.3d 531, 538 (Tenn. 2006).

In her motion to alter or amend, Mother cites several facts meant to show that her non-payment of child support was not willful.[6] The trial court, however, specifically found that Mother's failure to pay child support and uncovered medical expenses was willful, citing her $4,000.00 payment shortly before the contempt trial. As an initial matter, we first note that Rule 59.04 motions are not opportunities to re-litigate the issues previously adjudicated at trial. ***Vaccarella v. Vaccarella***, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (citing ***Bradley***, 984 S.W.2d at 933). Thus, this issue was not a proper ground for relief under Rule 59.04. *See* ***M.L.D.***, 182 S.W.3d at 895 (discussing the grounds for relief under Rule 59.04).

Even assuming arguendo that Mother raised a proper ground to alter or amend the trial court's judgment under Rule 59.04, we nevertheless conclude that she is not entitled to relief on this issue. Whether Mother had the ability to pay support and whether her failure to do so was willful are both issues of fact. ***State ex rel. Murray v. Neiswinter***, No. M2005-01983-COA-R3-CV, 2007 WL 565823, at *6 (Tenn. Ct. App. Feb. 23, 2007) ("The 'ability to pay' and 'willful failure to pay' elements are distinct findings of fact and both must be proven in order to find a person in criminal contempt."). Under Rule 13(e) of the Tennessee Rules of Appellate Procedure: "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." *See also* ***Cottingham v. Cottingham***, 193 S.W.3d 531, 538 (Tenn. 2006) (applying Rule 13(e) to a criminal contempt conviction arising out of a civil action). In order to meet this burden, Rule 24 of the Tennessee Rules of Appellate Procedure places on the appellant the duty to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal. The appellant also has the burden to provide this Court with a transcript

---

[6] It is not entirely clear from Mother's motion to alter or amend or the record on appeal whether the facts Mother cites in support of this particular argument were presented to the trial court in the contempt hearing. Mother does not expressly state in her motion, however, that these facts were newly discovered and could not have been discovered through due diligence prior to trial. Further, Mother filed no affidavit or exhibits to support these alleged facts or to show that the evidence contained in her motion was newly discovered. In ***Seay v. City of Knoxville***, 654 S.W.2d 397 (Tenn. Ct. App. 1983), this Court held that when a party seeks a new trial on the basis of newly discovered evidence, the moving party must file affidavits that "the evidence has been discovered since trial and that it could not have been discovered prior to trial through the exercise of due diligence." ***Id.*** at 399. This Court has applied the ***Seay*** holding to motions to alter or amend that likewise rely on newly discovered evidence. *See* ***Pittman v. Williamson Cty.***, No. M2003-02860-COA-R3-CV, 2005 WL 1886891, at *6 (Tenn. Ct. App. Aug. 9, 2005). Because Mother filed no affidavits regarding her ability to present this evidence at trial and, indeed, does not assert in her motion that this evidence is newly discovered, we will simply treat this evidence as having been in existence at the time of trial and, presumably, presented to the trial court. As discussed in detail, *infra*, however, the lack of transcript or statement of the evidence contained the record on appeal hinders our ability to determine if this evidence was actually presented to the trial court.

of the evidence or a statement of the evidence from which we can determine whether the evidence preponderates for or against the findings of the trial court. ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. ***J.C. Bradford & Co. v. Martin Constr. Co.***, 576 S.W.2d 586, 587 (Tenn. 1979).

Here, Mother filed no transcript or statement of the evidence from the trial court proceedings. In her reply brief, Mother asserts that this omission stems from her trial counsel's failure to retain a court reporter. Mother further asserts that no statement of the evidence was available because "none of the attorneys representing [Mother] participated in any of the proceedings below." Mother therefore asserts that at the time of the preparation of the appeal, she was unable to comply with Rule 24(c)'s requirement that the statement of the evidence be certified by Mother's counsel. Respectfully, we cannot agree.

First, we note that Mother's decision to change counsel was a voluntary decision made by her or her former counsel. Indeed, it appears from the oral argument in this cause that the decision to obtain different counsel on appeal was a strategic decision. Regardless of the reason for the change in counsel, Rule 24(c) clearly allows either an appellant's counsel or the appellant herself to certify that the statement of the evidence is "an accurate account of the proceedings." Mother asserts that this is an unrealistic requirement, but offers no explanation as to why Mother could not attempt, with the assistance of her new counsel, to create a statement of the evidence regarding a hearing that she personally attended. Even if Mother's attempt proved inadequate, it would then be Father's or the trial court's duty to object and attempt to correct the statement of the evidence to create an accurate representation of the proceedings. *See* Tenn. R. App. P. 24(c) ("If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement."), (e) ("Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court."); *see also* ***Lacy v. HCA Tristar Hendersonville Hosp.***, No. M2015-02217-COA-R3-CV, 2016 WL 4497953, at \*3 (Tenn. Ct. App. Aug. 25, 2016) (holding that when the parties submit inaccurate or insufficient statements of the evidence, the obligation is on the trial court to either give the parties an opportunity to correct the inaccuracies or to prepare its own statement of the evidence) (citing ***Bellamy v. Cracker Barrel Old Country Store, Inc.***, 302 S.W.3d 278, 281 (Tenn. 2009) (directing the trial court to resolve conflicts in competing statements of the evidence and to transmit a supplemental record to the Court of Appeals)). Mother made no such attempt. Accordingly, we will not excuse Mother's failure to comply with the clear mandates of Rule 24. Because the trial court's findings of fact are presumed to be correct in the absence of a transcript or statement of the evidence, we affirm the trial court's denial of Mother's motion to alter or amend on the issue of whether her failure to pay child support

and uncovered medical expenses was willful. The trial court's underlying judgment finding Mother guilty of thirty-seven separate counts of criminal contempt is therefore affirmed.

## II.

Mother next asserts that the trial court should have considered new evidence submitted with her motion to alter or amend that established that Mother could pay all of her outstanding obligations. According to this Court:

> In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, "it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence."

*Kirk v. Kirk*, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) (quoting *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983) (citations omitted)). Furthermore, "'[f]acts arising after the trial do not come within the rule of newly discovered evidence.'" *Barnhill v. Barnhill*, No. 86-101-II, 1986 WL 8280, at *3 (Tenn. Ct. App. July 30, 1986) (quoting 58 Am.Jur.2d *New Trial* § 167 (1971)). Instead, "'[n]ewly discovered evidence must be of facts existing at the time of trial.'" *Barnhill*, 1986 WL 8280, at *3 (quoting Wright & Miller, *Federal Practice and Procedure* § 2808 (1973)). "'If it were grounds for a new trial that facts occurring subsequent to the trial have shown an inaccurate prophecy, litigation would never come to an end.'" *Barnhill*, 1986 WL 8280, at *3 (quoting *Nordin Construction Co. v. City of Nome*, 489 P.2d 455, 473 (Alaska 1971)). As this Court clearly explained:

> [E]vidence that came into existence after the trial is not to be considered when deciding a [Rule] 59 motion. The purpose of a [Rule] 59 post-trial motion is to prevent unnecessary appeals by giving the trial court the opportunity to correct errors which occur before the entry of a judgment.

*Smith v. Smith*, No. W2002-00477-COA-R3-CV, 2003 WL 135056, at *7 (Tenn. Ct. App. Jan. 15, 2003) ("Newly discovered evidence . . . is that evidence which is in existence at the time of trial but is not ascertained at that time.").

Here, Mother's motion to alter or amend clearly references events that occurred after the May 26, 2015 hearing on Father's contempt petition. For example, Mother asserts that "since her incarceration," she has learned that she can return to her previous employment. Further, Mother's motion alleges that Mother signed a promissory note to obtain a loan from her sister to pay her child support obligation on July 8, 2015, over a month after the contempt hearing. Under these circumstances, the trial court did not abuse its discretion in denying

Mother's motion to alter or amend because the facts alleged by Mother are not a proper basis for the alteration of the trial court's judgment.

Furthermore, even assuming arguendo that some of the facts that Mother alleges in her motion were in existence at the time of the contempt hearing, nothing in Mother's motion alleges that these facts "could not have been known to [Mother] through exercise of reasonable diligence." *Kirk*, 447 S.W.3d at 869. Likewise, Mother did not attach to her motion an affidavit to establish this fact. *See In re Estate of Ross*, No. M2014-02252-COA-R3-CV, 2015 WL 4557058, at *6 (Tenn. Ct. App. July 28, 2015) ("In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, 'it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence.'") (quoting *Seay*, 654 S.W.2d at 399 (Tenn. Ct. App. 1983) (internal citations omitted) (requiring an affidavit to show this fact)). Thus, the trial court's denial of Mother's motion to alter or amend on this issue is affirmed.

### III.

Finally, Mother asserts that the trial court's judgment sentencing her to 403 days incarceration, to be served concurrently, was excessive in light of the circumstances. This Court described Tennessee court's criminal contempt power as follows:

> The power of courts to punish a party for contempt is delineated in Tenn. Code Ann. § 29-9-102. The power to inflict punishments for contempt of court extends to the willful disobedience or resistance of any party to any lawful order, decree or command of the court. Tenn. Code Ann. § 29-9-102(3).[7] Contempt may be either criminal or civil. Criminal contempt is used to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black*, 938 S.W.2d [394,] 398 [(Tenn.

---

[7] Tennessee Code Annotated Section 29-9-102(3) provides:

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

\* \* \*

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts . . . .

- 10 -

1996)]; *see also State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 191 S.W. 974 (1917). Generally, sanctions for criminal contempt are designed to punish the contemnor and are unconditional in nature. *Black*, 938 S.W.2d at 398. It is issued as punishment and is unconditional. *Ahern*, 15 S.W.3d [73,] 79 [(Tenn. 2000)].

*State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 613 (Tenn. Ct. App. 2006). Unless otherwise specifically provided, the circuit, chancery, and appellate courts are limited to imposing a fine of $50.00 and to imprisoning an individual for not more than ten days. Tenn. Code Ann. § 29-9-103.[8] Despite this limitation, the Tennessee Supreme Court has previously approved of the practice of imposing "the maximum ten-day sentence upon a single instance of criminal contempt," depending on the seriousness of the offense. *In re Sneed*, 302 S.W.3d 825, 828 (Tenn. 2010) (citing *Frye v. Frye*, 80 S.W.3d 15, 17, 19 (Tenn. Ct. App. 2002)).  Thus, the Tennessee Supreme Court has upheld a trial court's ruling that the defendant was guilty of multiple counts of criminal contempt, each count punishable by ten days in jail. *Sneed*, 302 S.W.3d at 828 (affirming trial court's finding that defendant was guilty of fifty separate counts of criminal contempt). Where "a defendant is convicted of more than one offense," however, "the sentencing court **must** determine whether the sentences run consecutively or concurrently to one another." *Sneed*, 302 S.W.3d at 828 (emphasis added) (reducing total effective sentence based upon fifty separate counts of criminal contempt).

Here, the trial court found Mother guilty of thirty-seven separate counts of criminal contempt and sentenced her to the maximum ten days per count. Combined with the suspended sentence previously imposed that the trial court revoked, Mother's total sentence was 403 days. Mother first asserts that her sentence inappropriately exceeds the maximum sentence set forth in Tennessee Code Annotated Section 36-5-104. Tennessee Code Annotated Section 36-5-104 provides:

> (a) Any person, ordered to provide support and maintenance for a minor child or children, who fails to comply with the order or decree, may, in the discretion of the court, be punished by

---

[8] Tennessee Code Annotated Section 29-9-103 provides:

> (a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

imprisonment in the county workhouse or county jail for a period not to exceed six (6) months.

(b) No arrest warrant shall issue for the violation of any court order of support if such violation occurred during a period of time in which the obligor was incarcerated in any penal institution and was otherwise unable to comply with the order.

(c) In addition to the sanction provided in subsection (a), the court shall have the discretion to require an individual who fails to comply with the order or decree of support and maintenance to remove litter from the state highway system, public playgrounds, public parks, or other appropriate locations for any prescribed period or to work in a recycling center or other appropriate location for any prescribed period of time in lieu of or in addition to any of the penalties otherwise provided; provided, however, that any person sentenced to remove litter from the state highway system, public playgrounds, public parks, or other appropriate locations or to work in a recycling center shall be allowed to do so at a time other than such person's regular hours of employment.

(d) In any proceeding to enforce child support, the court may apply an inference that the obligor had the ability to pay the ordered child support as set forth in § 36-5-101(a)(8).

In support of her argument, Mother cites the Tennessee Supreme Court's holding in *Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000), for the proposition that six months is the maximum sentence that may be imposed for criminal contempt involving issues of child support. Respectfully, we do not agree that *Ahern* stands for the proposition put forth by Mother.

In *Ahern*, mother filed a petition for criminal and civil contempt against father for failure to pay child support and alimony. *Id.* at 76. In a later amendment to the petition, mother noted that she was proceeding under both criminal and civil contempt. *Id.* The parties were first set to try the contempt petition in Division 5 of the Shelby County Circuit Court. *Id.* After the trial court heard testimony from the first witness and learned that the matters at issue involved a divorce previously heard in Division 8, the trial court *sua sponte* transferred the case to Division 8. *Id.* Once the case was transferred to Division 8, father objected on double jeopardy grounds and, alternatively, requested a jury trial. *Id.* The trial court ruled that both the objection and jury trial request were waived. *Id.* Eventually, the Division 8 trial court held a hearing on the contempt petition and found father guilty of criminal contempt. *Id.* at 77. Specifically, the trial court found that father had committed twenty-eight separate counts of criminal contempt for failure to pay alimony and sentenced him to five days for each count for a total sentence of 140 days. *Id.* The trial court further found that father failed

- 12 -

to pay school tuition and medical costs as required by the parties' parenting plan, sentencing father to 180 days for this failure, to run concurrently with the 140-day sentence. *Id.*

On appeal, father argued that the trial court erred in overruling his double jeopardy objection, or in the alternative, erred in denying his request for a jury trial. *Id.* Although the *Ahern* Court noted that father did not appeal the length of his sentence, the Tennessee Supreme Court nevertheless indicated that "the legislature has provided a specific statute to address the situation in which an obligor fails to comply with a child support order." *Id.* at 79. In the instant case, Mother asserts that this language indicates that the penalty provided by Tennessee Code Annotated Section 36-5-104 is the exclusive penalty for contemptuous acts related to the failure to pay child support. Respectfully, we cannot agree.

First, we note that the language in *Ahern* does not support Mother's contention. Indeed, the very sentence cited by Mother expressly states that the remedy contained in Section 36-5-104 is "[i]n addition to the contempt provisions in Title 29[.]" As previously discussed, Title 29 provides that circuit, chancery, and appellate courts may impose a fine of $50.00 and imprisonment of up to ten days for separate counts of criminal contempt, unless "otherwise specially provided" by another statute. Nothing in Tennessee Code Annotated Section 36-5-104 specifically limits a court's contempt power under Title 29. Indeed, the General Assembly does not expressly characterize Section 36-5-104 as a contempt statute.

Moreover, the *Ahern* decision cannot be fairly characterized as holding that trial courts are not entitled to sentence contemnors to more than six months in jail for violations of child support orders, as *Ahern* simply did not address this issue. In fact, in *Ahern*, the sentence imposed by the trial court was 180 days, or the equivalent of six months. *Ahern*, 15 S.W.3d at 77. Accordingly, the issue of whether a parent could be punished for more than six months for violations of child support orders under Title 29 was simply not at issue in *Ahern*.

Finally, we note that Tennessee courts have consistently characterized Sections 29-9-103 and 36-5-104 as separate and distinct concepts, which require discrete procedures and entail different rights. Indeed, in *Brown v. Latham*, 914 S.W.2d 887 (Tenn. 1996), the Tennessee Supreme Court held that:

> Section 36-5-104(a) defines a criminal offense and the respondents are entitled to jury trials. The statute states the essential indicia of a criminal offense. Its violation is not declared to be a contempt as contemplated by Tenn. Code Ann. § 29-9-102 (1980). Its stated purpose is not to compel performance but to punish for non-performance by imprisonment for a definite period of time. The language of subsection (b), "[n]o arrest warrant shall issue" under certain conditions, indicates a criminal proceeding. The penalty

- 13 -

imposed, imprisonment for a period of time not to exceed six months, conforms with the definition of a misdemeanor stated in Tenn. Code Ann. § 39-11-110 (1991), which provides, ". . . all violations of law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors." The punishment authorized far exceeds the $50[.00] fine and ten days imprisonment provided in Tenn. Code Ann. §§ 29-9-102, 103, which are the sanctions traditionally utilized to vindicate the authority of the courts. Therefore, the violation of Tenn. Code Ann. § 36-5-104(a) is a criminal offense, in a proceeding in which the respondent upon a finding of guilty may be imprisoned for a definite period not exceeding six months.

*Id.* at 188. A few years later, the Tennessee Supreme Court held that unlike Section 36-5-104, which is "the equivalent of punishment for committing a misdemeanor offense[,]" a person "charged with criminal contempt under Tenn. Code Ann. § 29-9-102 is not entitled to a jury trial." *Ahern*, 15 S.W.3d at 82.[9] Consequently, it is well-settled that Sections 29-9-103 and 36-5-104 are separate and distinct. This principle has been reaffirmed by this Court. *See* ***State, ex rel. Creighton v. Creighton***, No. M2010-01171-COA-R3-CV, 2011 WL 1344638, at *8 (Tenn. Ct. App. Apr. 7, 2011) ("We adhere to the principle stated in the foregoing cases and hold that the violation of a court order, punishable by a fifty dollar fine and/or ten days in jail under Tennessee Code Annotated Section 29-9-101, is not a 'criminal case,' unlike violations of Section 36-5-104."); *see also* ***State v. Hill***, No. M2011-02233-CCA-R3-CD, 2012 WL 3834066 (Tenn. Crim. App. Sept. 5, 2012) (no perm. app. filed) (holding that because Section 36-5-104 is a "general criminal statute," defendants are entitled to grand jury indictments, and appeals from convictions under Section 36-5-104 are properly before the Court of Criminal Appeals). As such, our Courts have continued to enforce child support orders through the contempt power authorized under Tennessee Code Annotated Section 29-9-101 *et seq.*, regardless of the enactment of Section 36-5-104. *See e.g.,* ***Norfleet v. Norfleet***, No. M2013-00652-COA-R3-CV, 2014 WL 1408146, at *4 (Tenn. Ct. App. Apr. 9, 2014), *perm. app. denied* (Tenn. Aug. 27, 2014) (affirming the trial court's ruling finding mother guilty of contempt for failing to pay child support and imposing punishment under Section 29-9-103); ***Rutledge v. Kelly***, No. M2011-02065-COA-R3-CV, 2012 WL 3711750, at *4

---

[9] We note that in ***Baker v. State***, 417 S.W.3d 428 (Tenn. 2013), the Tennessee Supreme Court indicated, in dicta, that the right to a jury may be implicated in a criminal contempt action if the contempt is "'serious' enough[.]" *Id.* at 437. The ***Baker*** Court, however, declined to define what constitutes a serious contempt other than to mention that other courts have concluded that punishment of less than six months is not "serious contempt[.]" *Id.* (quoting ***Bloom v. Illinois***, 391 U.S. 194, 198, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Mother does not assert in her appellate brief, nor did she argue in her motion to alter or amend, that the trial court erred in finding her in criminal contempt and sentencing her to more than six months imprisonment without affording her notice and an opportunity to have her case decided by a jury. Accordingly, we need not consider this issue.

(Tenn. Ct. App. Aug. 28, 2012) (affirming the trial court's ruling finding father guilty of contempt for failing to pay child support and imposing punishment under Section 29-9-103). Indeed, we have previously described Section 36-5-104 as follows:

> In addition to the general contempt statute, the General Assembly has provided a specific statute, Tenn. Code Ann[.] § 36-5-104, to address obligors who fail to pay ordered child support. That statute creates a separate criminal offense punishable by up to six months' imprisonment. ***Brown v. Latham***, 914 S.W.2d 887, 888 (Tenn.1996). **It does not affect the sanctions available for contempt.**

***Bryan v. Leach***, 85 S.W.3d 136, 160 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. Dec. 17, 2001) (emphasis added). Simply put, Tennessee Code Annotated Section 36-5-104 "is not a contempt statute." ***Mays v. Mays***, No. M2010-02479-COA-R3-CV, 2012 WL 1424970, at *8 (Tenn. Ct. App. Apr. 23, 2012) (holding that Section 36-5-104 is instead a criminal offense). As such, the trial court's power to punish under Section 29-9-103 is unaffected by Section 36-5-104. The trial court was, therefore, not required to limit its sentence to merely six months in compliance with Section 36-5-104, if it instead relied upon Section 29-9-103. We next turn to consider that question.

In this case, none of Father's three pending criminal contempt petitions specifically cite any statutory authority in their support. Accompanying every petition, however, Father filed a document entitled Notice of Constitutional Rights. This notice specifically states that Mother

> is being charged with at least one count of criminal contempt of court pursuant to Tennessee Code Annotated Section 29-9-102 et seq., for violation of the previous Orders of the Court, which could result in . . . incarceration for a period of at least ten (10) days for each act of criminal contempt in the Rutherford County Jail, or at least ten (10) days, plus a fine.[10]

None of the petitions or notices filed by Father in the record in any way cite Tennessee Code Annotated Section 36-5-5-104 as a basis for Father's allegations of contempt.

Mother argues in her brief, however, that the despite this notice, the trial court was not authorized to rely upon Tennessee Code Annotated Section 29-9-103 in its order because the

---

[10] These notices contain an incorrect statement of the law. As previously discussed, Tennessee Code Annotated Section 29-9-103 authorizes a punishment of **at most** ten days in jail for each count of criminal contempt, not "at least" ten days.

trial court's order does not specifically cite any statutory authority for the punishment that is imposed. Because this case was tried as a bench trial, Rule 52.01 of the Tennessee Rules of Civil Procedure mandates that the trial court make findings of fact and conclusions of law to support its decision. *See* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). Rule 52.01's requirement that the trial court make findings of fact and conclusions of law "is mandatory regardless of whether a party requests these findings." **Irvin v. Irvin**, No. M2010-01962-COA-R3-CV, 2011 WL 2436507, at *11 (Tenn. Ct. App. June 15, 2011); *see also* **Lake v. Haynes**, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *5 (Tenn. Ct. App. June 9, 2011) (describing Rule 52.01 as "making the issuance of findings of fact and conclusions of law mandatory").

As an initial matter, we note that this issue was not raised in Mother's motion to alter or amend the trial court's judgment. Typically, however, an appellant may question the sufficiency of the evidence to support the trial court's findings "whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment." Tenn. R. Civ. P. 52.02. Moreover, this Court has often raised the insufficiency of a trial court's findings of fact or conclusions of law *sua sponte* as a ground to vacate the trial court's judgment where a party appealed that judgment. *See, e.g.*, **Kirby v. Kirby**, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at *7 (Tenn. Ct. App. July 25, 2016) (vacating the trial court's judgment due to insufficient findings of fact and conclusions of law despite the fact that neither party raised the sufficiency of the trial court's compliance with Rule 52.01 as an issue on appeal); **In re Conservatorship for Ayers**, No. M2014-01522-COA-R3-CV, 2015 WL 3899406, at *4 (Tenn. Ct. App. June 24, 2015) (same); **In re Connor S.L.**, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *5 (Tenn. Ct. App. Nov. 8, 2012) (same); **Irvin**, 2011 WL 2436507, at *11(same); **Lake**, 2011 WL 2361563, at *5 (same).

The issue is complicated in this case, however, because Mother does not directly appeal the trial court's ruling; rather, Mother only appeals the trial court's denial of her motion to alter or amend.[11] Generally, only those issues that are specifically presented for

---

[11] Mother's choice to confine her appeal only to the question of whether the trial court denied her motion to alter or amend is somewhat puzzling. Because Mother's Rule 59.04 motion was filed timely, that is within thirty days after the entry of the trial court's judgment, the time for filing a notice of appeal of the trial court's underlying judgment was tolled until the entry of the order granting or denying Mother's post-trial motion. *See* Tenn. R. App. P. 4(b) ("In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: . . . (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion."); *see also* **Tennessee Farmers Mut. Ins. Co. v. Farmer**, 970 S.W.2d 453, 455 (Tenn. 1998) (holding that, for purposes of the time for filing a notice of appeal, a post-trial motion will be considered a Rule 59.04 motion based upon the motion's substance rather than form). Because Mother filed a timely Rule 59.04 motion and filed her notice of appeal within thirty days of the trial court's denial of that motion, she was entitled to appeal both the underlying judgment and the denial of her post-trial motion. Mother chose, however,

- 16 -

review and included in a statement of the issues section of the appellant's brief will be considered by this Court. Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011) ("An issue not raised in an appellant's statement of the issues may be considered waived."). Mother's motion to alter or amend the trial court's judgment did not raise the trial court's failure to comply with Rule 52.01 by making findings of fact or conclusions of law. Likewise, Mother did not assert that the judgment was flawed by the trial court's failure to cite to the specific statutory authority under which Mother's punishment was imposed, as she now argues.

Then again, Mother did expressly assert in her motion that the trial court's decision to impose a sentence of 403 days incarceration was "excessive" in light of the circumstances. Furthermore, on appeal, Mother argues that the trial court erred in failing to consider whether part of the sentence should run concurrently or be suspended. As previously discussed, when a party is found guilty of more than one contemptuous act, "the sentencing court must determine whether the sentences run consecutively or concurrently to one another." *Sneed*, 302 S.W.3d at 828. Furthermore,

> [a]lthough statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be "justly deserved in relation to the seriousness of the offense[s]," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, *id.* at § 40-35-103(2). *See also State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999). The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the sentencing court. *State v. Nelson*, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008).

*Sneed*, 302 S.W.3d at 828–29. Where a trial court fails to appropriately consider whether a sentence imposed is excessive, this Court is authorized to modify and reduce the sentence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 54 (Tenn. Ct. App. 1993). Mother asks this Court to utilize its power to modify her purportedly excessive sentence.

The question of when a sentence of criminal contempt is excessive was thoroughly considered by this Court in *Simpkins v. Simpkins*, 374 S.W.3d 413 (Tenn. Ct. App. 2012). In *Simpkins*, the trial court found husband guilty of fourteen willful violations of the parties' marital dissolution agreement and sentenced husband to the maximum sentence under Tennessee Code Annotated Section 29-9-103, which totaled 140 days in jail. *Id.* at 422. On appeal, husband argued that the trial court's sentence was excessive.

to limit the issue on appeal only to the denial of her motion to alter or amend.

"Although the record clearly established [h]usband's guilt of all fourteen counts of criminal contempt," the Court of Appeals nevertheless agreed that husband's sentence was excessive based upon the holding in *Sneed*. *Id.* at 425 (citing *Sneed*, 302 S.W.3d at 828–29). According to the Court "not every contemptuous act, or combination of contemptuous acts, justifies the imposition of a maximum sentence, particularly when consecutive sentencing is in play." *Simpkins*, 374 S.W.3d at 422. In reaching this result, the *Simpkins* Court noted that courts considering this issue should "look to the sentencing considerations set forth in Tennessee Code Annotated § 40-35-103 for guidance[.]" *Id.* at 424. Section 40-35-103 states:

> (1)     Sentences involving confinement should be based on the following considerations:
>
>> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;
>
> (2) The sentence imposed should be no greater than that deserved for the offense committed;
> (3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;
> (4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;
> (5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and
> (6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these.

The *Simpkins* Court further noted that "there is a presumption in favor of concurrent sentencing as distinguished from consecutive sentencing." *Simpkins*, 374 S.W.3d at 424 (citing *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987)). Finally, the Court explained that trial courts should "consider the statutory criteria [under Tennessee Code Annotated Section 40-35-115(a)] when determining whether . . . multiple sentences should be served concurrently or consecutively." Under Section 40-35-115(a), the court may only order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

Because the only factor under Section 40-35-115(a) that was applicable to the husband in *Simpkins* was the fact that he was sentenced for criminal contempt, the Court of Appeals ruled that "this factor alone does not justify the imposition of the absolute maximum sentence of 140 days." *Simpkins*, 374 S.W.3d at 425. The *Simpkins* Court thereafter considered each contemptuous act that the trial court found husband had committed, the timing of each act, and the seriousness of each act in light of the circumstances shown at trial. *Id.* Based upon these factors, the Court of Appeals ordered that his sentence be reduced for a total effective sentence of forty-nine days' incarceration.

In this case, the trial court found Mother guilty of: (1) seventeen counts of criminal contempt for her failure to pay medical bills in 2014; (2) twelve counts of criminal contempt for her failure to pay medical bills in 2015; (3) one count of criminal contempt relating to visitation on a school holiday; and (4) seven counts of criminal contempt for failing to pay child support from November 2014 to May 2015. The trial court sentenced Mother to the maximum of ten days for each violation. *See* Tenn. Code Ann. § 29-9-103. Including the thirty-three days remaining on Mother's previously suspended sentence, Mother's effective sentence totaled 403 days of incarceration.

For an order sentencing Mother to more than one year in jail in multiple ten-day increments, however, the trial court's order is surprisingly sparse. First, we note that nothing in the trial court's order indicates that it considered whether Mother's sentence should be served consecutively or concurrently, as required by *Sneed*. Further, the trial court completely omits any discussion of the factors contained in Sections 40-35-103 and 40-35-115(a). Moreover, the trial court's order here does not contain any factual findings underlying its contempt finding from which this Court could make an independent review of those factors. As noted by Mother, the trial court's order fails to even indicate the statutory provision it is relying upon in finding Mother in contempt and imposing the sentence of incarceration.

In *Simpkins*, this Court was able to independently review the trial court's order and record in order to determine the nature of the contemptuous acts husband had committed and their specific timing. In this case, however, given the lack of a transcript or statement of the evidence coupled with the paucity of the trial court's order, we are unable to render such a review. While we agree with Father that Mother's own failure to comply with Rule 24 by filing a transcript or statement of the evidence is partially to blame for this failure, we simply cannot overlook the utter lack of findings in the trial court's order, given the seriousness of the deprivation that was ordered.

Under these circumstances, we conclude that the trial court's failure to make specific findings of fact and conclusions of law in its order, together with its apparent failure to even consider the excessiveness of the sentence imposed, creates an injustice or error of law sufficient to justify reconsideration under Rule 59.04. We therefore vacate the denial of Mother's motion to alter or amend and remand to the trial court with instructions to consider whether Mother's sentence was excessive under the circumstances.

On remand, the trial court shall make written findings of fact and conclusions of law to support its ruling finding Mother guilty of thirty-seven counts of criminal contempt. Furthermore, the trial court shall consider the factors set forth above in determining whether the sentence imposed is excessive. While we decline to definitely state that Mother's sentence was excessive, we encourage the trial court to fully consider the implications of its

decision to incarcerate Mother for more than one year in reaching its ultimate decision. Such implications may include the best interest of the children and Mother's ability to pay any future child support or arrearages.

Given that we have ruled on some issues in Mother's favor, we deny Father's request for attorney's fees incurred in defending this appeal.

## Conclusion

The judgment of the Rutherford County Chancery Court is affirmed in part, vacated in part, and remanded for consideration of whether the sentence imposed was excessive in light of *Simpkins v. Simpkins*, 374 S.W.3d 413 (Tenn. Ct. App. 2012). Costs of this appeal are taxed one-half to Appellant Lisa E. Burris, and her surety, and one-half to Appellee James Morton Burris, for all of which execution may issue if necessary.


_____
J. STEVEN STAFFORD, JUDGE