IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2018

## CHRISTOPHER MICHAEL PARKER v. COURTNEY WILLIAMS PARKER

**Appeal from the Circuit Court for Bedford County**
**No. 11-675    Franklin L. Russell, Judge**

_____

**No. M2017-01503-COA-R3-CV**

_____

In this post-divorce dispute, the mother filed a criminal contempt petition alleging the father had violated the permanent parenting plan. Two years later, the father filed a petition for criminal contempt and modification of the parenting plan. The court consolidated the competing petitions for trial. Sometime after the court began hearing proof, the mother filed a motion to change venue, arguing that the court lacked subject matter jurisdiction to modify the plan because she and the child had lived in Georgia for seven years. The court denied the mother's motion. And after completion of the trial, the court found that a material change in circumstance had occurred sufficient to modify the residential parenting schedule and that modification of the schedule was in the child's best interest. The court also found the mother in criminal contempt for violations of the parenting plan. Based on the circumstances surrounding the mother's contempt, the court ordered the mother to pay the father's attorney's fees. Upon review, we conclude that the trial court retained exclusive, continuing jurisdiction to modify the parenting plan. Based on the state of the record, we also affirm the modification of the parenting plan and the criminal contempt conviction. But we vacate the award of attorney's fees and remand for reconsideration of the amount of fees awarded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Case Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON II and ARNOLD B. GOLDIN, JJ., joined.

Stephen W. Pate, Murfreesboro, Tennessee, for the appellant, Courtney Williams Parker.

Megan Trott, Shelbyville, Tennessee, for the appellee, Christopher Michael Parker.

# OPINION

## I.

### A.

On June 25, 2009, the Circuit Court for Bedford County, Tennessee, granted Christopher Michael Parker ("Father") and Courtney Williams Parker ("Mother") a divorce. The parties had one minor child, Lilah, born in August 2008. As part of the divorce decree, the court approved and incorporated a permanent parenting plan designating Mother as the primary residential parent and granting her 310 days of residential parenting time. Father received 55 days under the plan. In 2010, the parties agreed to, and the court approved, an increase of Father's parenting time to 86 days.

On March 24, 2011, Mother filed a petition for criminal contempt alleging numerous violations of the parenting plan. Father filed an answer, but no further action was taken on Mother's petition. Two years later, Father filed a petition for criminal contempt and modification of the parenting plan. Father also alleged numerous violations of the parenting plan. The court consolidated the competing petitions for trial.[1]

### B.

The trial took place over at least three days. On the first day of trial, July 10, 2014, Mother and Father gave their direct testimony. But no transcript or statement of the evidence from the first day of trial was included in the appellate record.

Approximately a year later, Mother filed a motion to change venue or continue the trial. Mother asserted that "she and the minor child have resided in the state of Georgia for an access [sic] of seven years, and prior to the commencement of the instant action and therefore, based upon the state of Georgia being the permanent and legal residence of mother and the parties [sic] minor child, jurisdiction should be transferred to the state of Georgia for all further proceedings." *See* Tenn. Code Ann. § 36-6-217(a)(1) (2017). In the alternative, she asked for a continuance so that her new counsel could adequately prepare for trial. Father opposed the motion, contending that Lilah had significant connections to Tennessee. After a hearing, the court denied Mother's motion.

On September 28, 2015, the trial continued, fortunately with a court reporter. The

---

[1] Father filed an amended contempt petition before a responsive pleading was filed. *See* Tenn. R. Civ. P. 15.01. Mother also filed an amended contempt petition. Because Father had answered her original petition and Mother did not have permission to file an amendment, the court declined to consider the allegations in Mother's amended petition at trial.

proof showed that Father was a high school teacher and baseball coach. He had remarried since the divorce. He lived in Dickson, Tennessee, with his current wife, their newborn son, and his stepson. In addition to Lilah, Father also had weekend parenting time with his daughter from another marriage.

When Mother and Father separated, Mother moved with three-month-old Lilah to Ringgold, Georgia, to be closer to her family. She testified that her home was approximately fifteen minutes from the Tennessee border.

Mother had also remarried. At the time of the hearing, she had a son with her current husband, with another child on the way. In the past year, Mother had left her teaching job in Chattanooga, Tennessee, to start a new teaching position at an elementary school in Ringgold.

At the time of the hearing, Lilah attended first grade in Ringgold. She was active in dance, gymnastics, church, and choir. Lilah also enjoyed her large extended family. She spent much of her free time with her multiple cousins. Mother disputed Father's claim that she never informed him about Lilah's activities in Georgia. She maintained that he simply chose not to attend.

According to Father, when Lilah visited, he spent as much time with her as possible. They enjoyed outdoor activities such as canoeing, fishing, and hiking at nearby parks. But Lilah's favorite activity was helping him coach baseball. Recently she had started playing on a recreational team that he coached. Father claimed that Lilah had a good relationship with her siblings, including her stepbrother. Father tried to coordinate his residential time with his other daughter to coincide with Lilah's visits. Lilah had never expressed to Father any desire to end her visits early. Lilah also spent time with Father's parents when she was in Tennessee.

Father and his current wife explained that child exchanges with Mother were a source of conflict. According to them, Mother was overtly hostile. She overreacted if Father was late to the extent of accusing him of kidnapping Lilah. She often called Father "an idiot," among other derogatory terms, during exchanges. But since Mother's current husband began accompanying Lilah to exchanges, the situation had calmed.

Mother and Father had such difficulty communicating that maternal grandmother had volunteered to act as a mediator. Both Mother and Father agreed that communicating through the maternal grandmother improved matters. But even maternal grandmother had been unable to resolve the ongoing disputes about Father's weekend parenting time.

Father claimed Mother frequently denied him weekend visitation. He missed weekend visitation for three months in the spring of 2013 and two weekends in the summer of 2015. Although Mother agreed that at times she threatened to withhold Lilah

3

from visitation, she claimed that every missed visit was because Lilah was sick. She also maintained that Father did not exercise all of his parenting time, a claim Father vehemently denied.

Father complained that Mother did not encourage his relationship with Lilah. Mother often called him derogatory names. He provided reams of text and email messages filled with derogatory language. He told the court that Lilah's demeanor would change dramatically whenever Mother was watching her. If Mother was around, Lilah assumed a "poker face." As soon as Mother was gone, Lilah became happy and affectionate.

Mother agreed that Lilah loved Father. She regretted the tone of her communications with Father. But she denied ever making any derogatory comments about Father in Lilah's presence.

At the conclusion of the proof, the court found Mother in contempt of court for denying Father his parenting time and making derogatory statements about Father in the presence of the child. The court reserved the issue of punishment. The court also awarded Father additional visitation in the summer months to make up for his missed visitation.

In a final order, entered on July 20, 2017, the court found a material change in circumstance sufficient to change the residential parenting schedule. The court determined that an increase in Father's parenting time was in the child's best interest and adopted a modified parenting plan that granted Father 120 days of residential parenting time. Mother's contempt petition against Father was dismissed. As for Mother's contempt, the court elected not to send Mother to jail. But "based on the circumstances surrounding [Mother's] contempt," the court ordered Mother to pay Father's attorney's fees, totaling $24,952.30.

## II.

### A. RECORD ON APPEAL

On appeal, Mother challenges the court's denial of her motion to change venue, the modification of the residential parenting schedule, the criminal contempt finding, and the attorney's fee award. As an appellate court, our "power to review is limited to those 'factual and legal issues for which an adequate legal record has been preserved.'" *Reid v. Reid*, 388 S.W.3d 292, 294-95 (Tenn. Ct. App. 2012) (quoting *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at * 1 (Tenn. Ct. App. Feb. 6, 2001)).

The appellant bears primary responsibility for "preparing the record and providing to the appellate court a 'fair, accurate and complete account' of what transpired at the

trial level." *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005) (quoting *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993)). Our appellate rules direct the appellant to have a transcript or a statement of the evidence prepared that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See* Tenn. R. App. P. 24(b), (c).

We have no transcript or statement of the evidence reflecting what occurred at the first day of trial or the hearing on Mother's motion to change venue. And although we have transcripts from the two final days of trial, the court limited the proof to evidence not covered on the first day of trial. The lack of an adequate record hampers our ability to review the court's factual findings. *See* Tenn. R. App. P. 13(d). Without a transcript or a statement of the evidence, we have no choice but to presume that the evidence presented below was sufficient to support the court's judgment. *See Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); *see also Bishop v. Bishop*, 939 S.W.2d 109, 110 (Tenn. Ct. App. 1996) (explaining that "[a] partial evidentiary record would not exclude the possibility that other evidence tilted the balance in favor of the [court's] findings"). With these precepts in mind, we turn to the issues Mother has raised on appeal.

## B. MOTION TO CHANGE VENUE

### 1. Subject Matter Jurisdiction

Mother first argues that the court lacked subject matter jurisdiction to modify the parenting plan. Without subject matter jurisdiction a court lacks the "power to adjudicate a particular type of controversy," and any resulting judgment is void. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). Our "determination of whether subject matter jurisdiction exists is a question of law, [so] our standard of review is de novo, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

A Tennessee court has subject matter jurisdiction to modify a previous custody determination upon proof of a material change in circumstance. Tenn. Code Ann. § 36-6-101(a)(2)(B) (2017). But if the child no longer resides in Tennessee, subject matter jurisdiction can be lost. *See id.* § 36-6-217(a). Continuing subject matter jurisdiction under these circumstances is governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Id.* Under the UCCJEA, a Tennessee court has exclusive, continuing jurisdiction to modify a prior child-custody determination unless:

> (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection,

5

training, and personal relationships; or

(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

*Id.* Because Father resides in Tennessee,[2] our focus is on subsection (a)(1).

A Tennessee court does not lose subject matter jurisdiction merely because the child moves to another state. *See Id.* § 36-6-217 cmt. Something more is required. Continuing jurisdiction is not lost until the originating court determines that significant connections and substantial evidence are no longer available in the forum state. *Id.* § 36-6-217(a)(1). The official comments to the UCCJEA[3] clarify that the proper inquiry is whether "the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction [has] become[] so attenuated that the court c[an] no longer find significant connections and substantial evidence." *Id.* § 36-6-217 cmt.

Mother argues that the court erred in denying her motion because Lilah's only connection to Tennessee is her visitation with Father. Mother relies on two previous decisions of this Court in which we held that Tennessee lost exclusive, continuing jurisdiction after the child at issue had left the state. *See Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *9 (Tenn. Ct. App. Jan. 26, 2009); *Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107, at *5-6 (Tenn. Ct. App. Dec. 29, 2004). The determination of whether significant connections and substantial evidence remain in the forum state is a fact-sensitive inquiry. *See* Claudia G. Catalano, Annotation, *Construction and Application of Uniform Child Custody Jurisdiction and Enforcement Act's Exclusive, Continuing Jurisdiction Provision—No Significant Connection/Substantial Evidence*, 59 A.L.R.6th 161 (2010) (discussing cases applying this provision of the UCCJEA). We conclude that our previous decisions are not dispositive here.

In *Lee v. Lee*, the father filed a petition for contempt and to change custody after the child and his mother had moved to California. *Lee*, 2004 WL 3021107, at *1-2. The record reflected that the child visited the father in "both California and Tennessee, but primarily in California." *Id.* at *5. Father's visitation was later suspended after questions

---

[2] Jurisdiction under the UCCJEA is determined as of the date the petition to modify was filed. *See* Tenn. Code Ann. § 36-6-217 cmt. ("Jurisdiction attaches at the commencement of a proceeding."); *see also Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *2 (Tenn. Ct. App. May 17, 2012) ("The issue then becomes whether one of the two statutory triggers had occurred at the time when Father filed his petition to modify . . . .").

[3] In any dispute over the meaning of a provision of the UCCJEA, the official comments "shall constitute evidence of the purposes and policies underlying such sections . . . ." Tenn. Code Ann. § 36-6-203 (2017).

arose about his mental health. *Id.* at *2. We determined that "[t]he record does not contain any evidence of any current connection between the child and this state other than that his father lives here." *Id.* at *5. And "virtually all" evidence pertaining to the child's current welfare was in California. *Id.* Under these circumstances, the Tennessee court "no longer had continuing, exclusive jurisdiction over custody issues related to the child." *Id.* at *6.

Similarly, in the *Graham* case, the father filed a petition for contempt and to modify custody after the children had moved to another state. *Graham*, 2009 WL 167071, at *2-3. We noted that the children had not lived in Tennessee for seven years. *Id.* at *5. The father exercised his parenting time both in Tennessee and the children's new home state. The children never attended school in Tennessee or participated in extracurricular activities in Tennessee. *Id.* Their schools, physicians, friends, and church were all in Florida. *Id.* Unlike the *Lee* case, the father's visitation had not been suspended. Even so, we found that the children lacked a significant connection to Tennessee because their only connection "is that their father lives there and they visit with him during holidays and summers." *Id.* at *9. Based on this conclusion and our determination that all the evidence relevant to the allegations in the father's petition originated in Florida, we concluded that "the courts of Tennessee no longer ha[d] continuing exclusive jurisdiction over custody issues regarding these children." *Id.*

Even these short descriptions of our previous decisions demonstrate that continuing jurisdiction under the UCCJEA depends on the unique facts of each case. To the extent that our decision in *Graham* can be read to hold that a child cannot maintain a significant connection with Tennessee through regular visitation with a parent who still resides in Tennessee, we disagree. Regular visitation may foster a continuing relationship between the child, the parent, and this State.

Here, Father exercised all of his parenting time in Tennessee. Father and Lilah have a good relationship. Mother conceded that Lilah loves Father. As the UCCJEA comments explain, it is only when the relationship between the child and the resident parent has become so attenuated that the court cannot find a significant connection and substantial evidence that subject matter jurisdiction is lost. Tenn. Code Ann. § 36-6-217 cmt. And here we also have other evidence connecting Lilah to Tennessee. Lilah has two half-siblings, one step-sibling, and grandparents in Tennessee. She is active in sports in Tennessee. Her pediatrician is in Tennessee. She was covered by a Tennessee health insurance plan.

We further conclude that substantial evidence relevant to Father's modification petition remained available in Tennessee. Father alleged that Mother denied him visitation and made derogatory comments about him in Lilah's presence. Evidence about Lilah's demeanor and interactions with both parents was available in Tennessee. All child exchanges, another important area of inquiry, occurred in Tennessee. The court

was intimately familiar with these parents having presided over numerous motions since the divorce. And while other evidence about Lilah's activities originated in Georgia, we cannot say that substantial evidence was unavailable in Tennessee.

## 2. Inconvenient forum

Mother next argues that the court should have declined to exercise jurisdiction because Tennessee was an inconvenient forum. *See id.* § 36-6-222(a) (2017). But we can find no evidence in this record that this issue was raised in the trial court. Mother did not raise this issue in her motion to change venue. And the court did not address this issue in its written order. Because "[i]ssues not raised in the trial court cannot be raised for the first time on appeal," we deem this issue waived. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).
.

### C. MODIFICATION OF RESIDENTIAL PARENTING SCHEDULE

Mother also contends that the court erred in finding a material change in circumstance sufficient to modify the residential parenting schedule. Tennessee courts apply a two-step analysis to requests for either a modification of the primary residential parent or the residential parenting schedule. *See, e.g., In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification). The threshold issue is whether a material change in circumstance has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C). Only if a material change in circumstance has occurred do we consider whether a modification to the parenting plan is in the child's best interest by examining the statutory best interest factors. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).

The "determination[] of whether a material change in circumstances has occurred" is a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C). Here, we are unable to review this factual issue because Mother failed to include a transcript or a statement of the evidence from the first day of trial. So we must presume that there was sufficient evidence to support the court's finding. *See Coakley*, 840 S.W.2d at 370.

### D. CRIMINAL CONTEMPT

Mother also challenges the court's criminal contempt finding. Under Tennessee Code Annotated § 29-9-102(3) (2012), courts have the power to "issue attachments, and inflict punishments for contempts of court" for "[t]he willful disobedience or resistance

of any officer of the such [sic] courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." A finding of contempt may be either civil or criminal in nature. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Criminal contempt, which is at issue here, "is punishment for an offense against the authority of the court." *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992). "In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474. To find either civil or criminal contempt, "a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000); *see also Furlong v. Furlong*, 370 S.W.3d 329, 336-37 (Tenn. Ct. App. 2011) (finding willfulness to be an element of criminal contempt based upon alleged disobedience of a court order).

Once convicted of criminal contempt, a person loses his presumption of innocence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, the person convicted "bear[s] the burden of overcoming their presumption of guilt on appeal." *Id.* We reverse a contempt finding "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

Mother's challenge is a narrow one. She does not deny that she made derogatory comments about Father and his family. Rather, she contends that the court had insufficient proof that she made derogatory comments in Lilah's presence. But without a record of the evidence presented at the first day of trial, we must presume that the evidence supported the court's finding. *See Burris v. Burris*, 512 S.W.3d 239, 248 (Tenn. Ct. App. 2016) (affirming the trial court's criminal contempt finding in the absence of a transcript or statement of the evidence).

### E.  ATTORNEY'S FEES

Mother also appeals the court's award of attorney's fees. The court ordered Mother to pay Father's attorney's fees of $24,952.30 "based on the circumstances surrounding [Mother's] contempt." Mother correctly points out that attorney's fees may not be awarded as a sanction for criminal contempt. *See Watts v. Watts*, 519 S.W.3d 572, 578 (Tenn. Ct. App. 2016). Punishment for criminal contempt is limited to either a fine, imprisonment, or both. Tenn. Code Ann. § 29-9-103(a) (2012). Unless otherwise provided, the fine may not exceed fifty dollars. *Id.* § 29-9-103(b).

But Father's contempt petition included a request to modify custody. And when this case was decided, the court had authority to award attorney's fees to the plaintiff spouse in an action to modify custody. *Id.* § 36-5-103(c) (2017); *see also Sherrod*, 849 S.W.2d at 785. Even so, under the version of the statute applicable here, the court may only award attorney's fees incurred in pursuing the modification request, not the

9

allegations of criminal contempt.[4] *Watts*, 519 S.W.3d at 585-86.

We are unable to ascertain whether the fees awarded were incurred with regard to the modification petition. The attorney's fee affidavit relied on by the court was not included in the appellate record. Under these circumstances, we vacate the award of attorney's fees. On remand, the court may consider whether it should exercise its discretion to award Father's attorney's fees under Tennessee Code Annotated § 36-5-103(c).

## III.

The court did not err in denying Mother's motion to change venue. Based on these facts, the trial court retained exclusive, continuing jurisdiction to modify the parenting plan. And because Mother failed to provide a record of what occurred at the first day of trial, we conclusively presume that the evidence supported the court's finding of a material change in circumstance sufficient to modify the parenting schedule. For the same reason, we affirm the court's finding of criminal contempt. But because we are unable to determine whether the award of attorney's fees was limited to those fees incurred in pursuing the custody modification, we vacate the award and remand for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE

---

[4] Effective July 1, 2018, the Legislature amended Tennessee Code Annotated § 36-5-103(c) to allow a prevailing party to recover attorney's fees incurred in "any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any . . . provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. § 36-5-103(c) (Supp. 2018). But this amendment is inapplicable here. *See Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995) (explaining that statutes that change the amount of damages recoverable are substantive and cannot be applied retroactively).