IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2025

## MARINA GEORGOPULOS v. ZACHARY FERRELL

**Appeal from the Circuit Court for Davidson County**
**No. 22FD5    Stanley Kweller, Judge**

_____

**No. M2024-01400-COA-R3-CV**

_____

Father was held in criminal contempt for willful failure to provide Mother with the current address where he and their child resided.  The court fined him $50 and sentenced him to serve 10 days incarcerated, though it suspended the incarceration upon good behavior and continued compliance with court orders.  The trial court also granted Mother attorney's fees related to the prosecution of that count of contempt.  Father appeals.  We affirm and remand for a determination of Mother's attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and VALERIE L. SMITH, J., joined.

Zachary Ferrell, Madison, Tennessee, pro se.

Morgan E. Smith, Nashville, Tennessee, for the appellee, Marina Georgopulos.[1]

**OPINION**

I.

Zachary Ferrell (Father) and Marina Georgopulos (Mother) divorced in Alabama when their minor child was approximately two and a half years old.  The divorce judgment provided that Father would have physical custody of the child.  Mother, who lived in Michigan, was granted monthly visitation "to be exercised in the city in which the child[]

_____

[1] In various parts of the record, Mother's name is spelled "Georgopulous," "Georgopolus," "Georgopulos," and "Georgopulus."  We use the spelling as it appears in the divorce decree.

reside[s]" plus a week of Christmas parenting time and two months of summer parenting time without geographical restrictions.

A little over one year after the divorce, Mother petitioned to register the judgment in the State of Tennessee for enforcement and modification of the parenting plan. *See* Tenn. Code Ann. § 36-6-229 (permitting registration of a child custody determination from another state under the Uniform Child Custody Jurisdiction and Enforcement Act). According to Mother, Father had relocated with the child to Tennessee without notifying her, and she had only learned of their whereabouts through a private investigator. She also accused Father of withholding the child from in-person visitation, Facetime sessions, and phone calls. Based on these allegations and more, she sought to be named primary residential parent and to relocate the child to Michigan.

The Alabama divorce judgment addressed relocation as follows:

**THAT the order set out below regarding relocation requirements shall NOT apply to a change of principal residence of a child to a residence which is 60 miles or less from the residence of a non-relocating parent who is entitled to custody of or visitation with the child or if the change or proposed change results in the child residing nearer to the non-relocating parent than before the change or proposed change, unless such change in the principal residence of a child results in the child living in a different state:**

Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify other parties who have custody of or the right of visitation with a child of any change in his or her address or telephone number, or both, and of any change or proposed change of principal residence and telephone number or numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this decree until such child reaches the age of majority or becomes emancipated and for so long as you are entitled to custody of or visitation with a child covered by this order. If there is to be a change of principal residence by you or by a child subject to the custody or visitation provisions of this order, you must provide the following information to each other person who has custody or visitation rights under this decree as follows:

(1) The intended new residence, including the specific street address, if known.
(2) The mailing address, if not the same as the street address.
(3) The telephone number or numbers at such residence, if known.

(4) If applicable, the name, address, and telephone number of the school to be attended by the child, if known.

(5) The date of the intended change of principal residence of a child.

(6) A statement of the specific reasons for the proposed change of principal residence of a child, if applicable.

(7) A proposal for a revised schedule of custody of or visitation with a child, if any.

(8) Unless you are a member of the Armed Forces of the United States of America and are being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating person that an objection to the relocation must be made within 30 days of receipt of the notice or the relocation will be permitted.

You must give notice by certified mail of the proposed change of principal residence on or before the 45th day before a proposed change of principal residence. If you do not know and cannot reasonably become aware of such information in sufficient time to provide a 45-day notice, you must give such notice by certified mail not later than the 10th day after the date that you obtain such information.

*See* Ala. Code §§ 30-3-162(b), -163, -164, -165(a)-(b).

Father opposed the petition, asserting that he "continue[d] to reside in the State of Alabama," though he had "stayed at" the Tennessee address Mother provided "on occasion when visiting family in the Middle Tennessee area." The Tennessee court stayed proceedings pending the Alabama court's determination of Father's residence.

In the Alabama court, Mother and Father filed competing motions to modify the parenting plan. Mother claimed that the child "appeared to be in a different location than [the child] had been previously" during their Facetime calls. She had police perform welfare checks at the Tennessee address found by her private investigator and the Alabama address claimed by Father, but Father and the child were not at either address. Mother had "no knowledge of where the child is."

For his part, Father claimed that the child's enrollment at a therapy center that served the child's special needs was a material change in circumstances that warranted a significant reduction in Mother's summer parenting time. According to Father, the center required the child's attendance "between the hours of 9:00 a.m. until 3:00 p.m. Monday-Friday" and could not accommodate a summer spent out of state.

Shortly before Mother's summer parenting time was to begin, Father admitted that he and the child had, in fact, moved to Tennessee, agreed to dismiss the Alabama matter, and filed a counterpetition for modification in the Tennessee court. In the Tennessee court,

Father asked the trial court to reduce Mother's summer parenting time on an "emergency" ex parte basis, pointing to the child's "compulsory attendance" at the therapy center as the "exigent" material change in circumstance.

Mother countered that she had only learned of the child's enrollment at the therapy center through Father's court filings, in violation of the parenting plan's joint decision-making provision. Furthermore, in Mother's view, this was not an emergency. The operative parenting plan already contemplated the child's treatment, requiring Father to "inform [Mother] of all the doctors['] and physical[] therapists['] names so she may contact same" and requiring Mother to "coordinate with the current physical and occupational therapists for the child's . . . therapies and . . . continue same in Michigan while the child is in her care." The trial court did not hear Father's "emergency" counterpetition before Mother's summer parenting time was to begin.

When Mother arrived at the agreed-upon public exchange site to pick up the child for her summer parenting time, neither Father nor the child were present. Mother could not "go to [Father's] home to obtain the minor child with the authorities" because Father still "ha[d] not provided Mother with his address . . . [allegedly] in violation of the court order."

Mother petitioned to hold Father in criminal contempt and for immediate possession of the child. One count of contempt[2] alleged that "Father ha[d] failed to provide Mother with his current address in violation of the Divorce Order." Father had relocated at least two more times since Mother had filed the petition to register the foreign divorce judgment. Mother had learned of one "previous address" only "by chancing upon an eviction action filed in" general sessions court several months earlier. According to her, Father was "refusing to provide [her] with" a current address "so that she c[ould] pick the minor child up when Father fails to appear at the exchange location."

In his answer to the contempt petition, Father agreed that he had not provided Mother with his address and that he was "in violation of th[e] provision" requiring him to notify any party with a right of visitation of any change of address. He claimed that he was "in the midst of a move" from the address listed in the eviction action and provided a new address, explaining that "[s]aid addresses are 5.1 miles apart from each other."[3]

---

[2] Initially, Mother's petition listed five counts of criminal contempt. Mother voluntarily dismissed three counts, explaining that, "[f]or purposes of economy, she intend[ed] to address those issues with the underlying petition for modification and only proceed with counts 1 & 2 on her contempt petition at the final hearing" on criminal contempt. After the hearing, the trial court determined that it could not find Father guilty of contempt on Mother's other remaining count due to ambiguity in certain language in the divorce judgment.

[3] On appeal, Father states that the addresses are 6.1 miles apart.

After a hearing on the matter – the transcript of which is not in the appellate record – the trial court found Father guilty of one count of criminal contempt for the willful violation of the divorce judgment by the "failure to provide his address of where he was living at the time of the filing of the Contempt Petition." For this count of contempt, the court fined Father $50 and ordered him to serve 10 days in jail, though it suspended the incarceration "upon good behavior and continued compliance by [Father] through the remaining pendency of the underlying modification action." The trial court also granted Mother's request for attorney's fees in the amount of $2,500 for the successful prosecution of this count of contempt. Father appeals.

II.

Father is proceeding pro se in this appeal. Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015). Courts should be mindful that pro se litigants often lack legal training and may be unfamiliar with the justice system. *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015). Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tenn. Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021).

Pro se litigants may not, however, "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or "dig through the record in an attempt to discover arguments or issues that [they] may have made had they been represented by counsel." *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

III.

Mother seeks dismissal of Father's appeal based on his failure to comply with the Tennessee Rules of Appellate Procedure regarding the content of appellate briefs. Father's brief contains no table of contents, no table of authorities, no statement of the case, no citations to the record, and no citations to authority. *See* Tenn. R. App. P. 27(a)(1), (2), (5), (6), (7); Tenn. Ct. App. R. 6(a). Father's pro se status does not excuse his lack of

compliance. *Gibson v. Bikas*, 556 S.W.3d 796, 803 (Tenn. Ct. App. 2018). However, Tennessee courts have a "longstanding policy favoring resolution of cases on the merits," *DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025), and the overall intent of the appellate rules is "to disregard technicality in form in order to determine every appellate proceeding on its merits," *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024). Thus, "Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process . . . ." *DiNovo*, 706 S.W.3d at 336. When a violation of these Rules does not prejudice the opposing party or "otherwise frustrate . . . meaningful appellate review," this court may disregard such deficiencies. *Id.*; *Trezevant*, 696 S.W.3d at 531.

Here, it is clear from Father's briefing exactly what his argument for reversible error is. He argues that the divorce judgment was ambiguous as to whether the notice requirement applied to his relocation because he was moving closer to the noncustodial parent. In considering this issue, we are able to maintain this court's role as a neutral reviewer without impermissibly advocating for one of the parties or looking past the violation where there is unfair prejudice to the opposing party or an excessive burden on the court. *See*, *e.g.*, *Trezevant*, 696 S.W.3d at 531 (noting that "an appellant that broadly asserts error in the statement of issues and presents an argument that leaves the opposing party guessing at the issues to which it must respond, or leaves the reviewing court scouring the record for reversible errors, risks having its issues waived"); *Hamadani v. Meshreky*, No. M2023-01161-COA-R3-CV, 2024 WL 3466977, at *3 (Tenn. Ct. App. July 19, 2024) (declining to consider the merits based upon a Rule 27 violation where the nature of the violation was such that "[t]o consider this appeal on the merits would necessitate shifting this court's role on appeal from neutral reviewer to advocate for the appellant"); *Etheredge v. Estate of Etheredge*, No. M2022-00451-COA-R3-CV, 2023 WL 5367681, at *4 (Tenn. Ct. App. Aug. 22, 2023) (considering an issue despite a Rule 27 violation where "the error in approach to record citation by Wife's Estate has not imposed meaningful prejudice to the [opposing party] or any meaningful burden upon this court"); *FedTrust Fed. Credit Union v. Brooks*, No. W2022-01119-COA-R3-CV, 2023 WL 3994520, at *2 (Tenn. Ct. App. June 1, 2023) (considering an issue where "the legal analysis is relatively straightforward, and we perceive no prejudice to [the opposing party] or the administration of justice from considering [appellant's] arguments despite her Rule 27 violations"); *City of La Vergne v. LeQuire*, No. M2016-00028-COA-R3-CV, 2016 WL 6124117, at *2 (Tenn. Ct. App. Oct. 19, 2016) (considering the appeal on the merits despite violations of Rule 27 because the shortcomings of the brief did "not impede our ability to consider the merits of his argument on appeal" and the opposing party "does not contend that it would be unfairly prejudiced by our doing so").

This court has previously addressed the merits of a defective brief when "the legal analysis is relatively straightforward" and neither the appellee nor the administration of justice would be prejudiced by looking past deviations from the Tennessee Rules of Appellate Procedure. *Brooks*, 2023 WL 3994520, at *2. In addition to the clarity in the

- 6 -

issue presented on appeal, we are presented with a modestly sized record with relevant portions being clear, and Mother has filed a brief that illustrates her understanding of exactly what Father is arguing and in which she is able to fully engage with his argument. Because the Rule 27 violations in Father's appellate brief have not imposed any meaningful burden upon this court nor any meaningful prejudice on an opposing party with regard to considering the argument on the merits, we decline to dismiss this appeal despite the violations of Rule 27.

IV.

On appeal, Father argues that the trial court erred in holding him in contempt because he reasonably read the divorce judgment's notice provision to be inapplicable to his relocation because he relocated within Tennessee and because the relocation brought him closer to, rather than farther away from, Mother. He points to the divorce judgment's language that "relocation requirements shall <u>NOT</u> apply . . . if the change or proposed change results in the child residing nearer to the non-relocating parent than before the change or proposed change, unless such change in the principal residence of a child results in the child living in a different state." He contends that this language is ambiguous; accordingly, he reads the relocation requirements to be inapplicable to any in-state move that resulted in the child residing closer to Mother's home in Michigan.

Criminal contempt requires proof of the following elements:

First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Furlong v. Furlong*, 370 S.W.3d 329, 336-37 (Tenn. Ct. App. 2011) (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008) and applying its standards in the context of criminal contempt).

Once an adjudication of guilt has been entered on a count alleging criminal contempt, "the contemnor loses the presumption of innocence and bears the burden of overcoming the presumption of guilt on appeal." *State v. Beeler*, 387 S.W.3d 511, 519 (Tenn. 2012). The reviewing court gives the prevailing party the strongest legitimate view of the evidence and all reasonable and legitimate inferences to be drawn from the evidence. *Furlong*, 370 S.W.3d at 338. On appeal, this court determines whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Cottingham v.*

*Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006); *see Beeler*, 387 S.W.3d at 519; *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996).

To find criminal contempt based upon violation of a court order, the court's order that was violated must "be clear, specific, and unambiguous." *Konvalinka*, 249 S.W.3d at 354; *see Long v. McAllister-Long*, 221 S.W.3d 1, 14 (Tenn. Ct. App. 2006) (requiring a clear and unambiguous order in a case involving criminal contempt). As this court has previously stated,

> Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil[4] contempt. Orders need not be "full of superfluous terms and specifications adequate to Counter any flight of fancy a contemner may imagine in order to declare it vague." They must, however, leave no reasonable basis for doubt regarding their meaning.
>
> Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review.

*Furlong*, 370 S.W.3d at 337 (quoting *Konvalinka*, 249 S.W.3d at 356 (citations omitted)); *see also, e.g., Lehmann v. Wilson*, No. M2023-00232-COA-R3-CV, 2024 WL 901426, at *3 (Tenn. Ct. App. Mar. 4, 2024); *Stark v. Stark*, No. W2021-01288-COA-R3-CV, 2023 WL 5098594, at *8 (Tenn. Ct. App. Aug. 9, 2023), *perm. app. denied* (Tenn. Feb. 13, 2024); <u>*Nolan v. Nolan*</u>, No. W2021-01018-COA-R3-CV, 2023 WL 4559883, at *15 (Tenn. Ct. App. July 17, 2023).

When the sufficiency of the evidence is challenged in a criminal contempt action, "our standard of review is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cottingham*, 193 S.W.3d at 538; Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a

---

[4] While *Furlong* leaves the reference to civil contempt from *Konvalinka* in place, *Furlong* itself applies these standards to criminal contempt. *Furlong*, 370 S.W.3d at 336 ("*Konvalinka* is a case involving civil contempt, but, with the noted exception of the standard for reviewing the sufficiency of the evidence, it is clear to us that the following analysis set out in *Konvalinka* applies to all contempt proceedings.").

reasonable doubt."). To assist the appellate courts in this review, the Tennessee Rules of Appellate Procedure require the appellant to prepare a record "sufficient to convey a fair, accurate and complete account of what transpired [in the trial court] with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(a); *see* Tenn. R. App. P. 24(b) (noting that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"); Tenn. R. App. P. 24(c) (in the absence of a transcript, the appellant is charged with preparing a "statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal").

This court has noted that

> . . . Rule 24 of the Tennessee Rules of Appellate Procedure places on the appellant the duty to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal. The appellant also has the burden to provide this Court with a transcript of the evidence or a statement of the evidence from which we can determine whether the evidence preponderates for or against the findings of the trial court.

*Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016). "In the absence of either a transcript or a statement of the evidence, we must conclusively presume on appeal that the trial court's findings of fact are supported by the evidence." *Id.* (citing *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979). In the present appeal, the record contains neither a transcript nor a statement of the evidence.

Even assuming arguendo that Father is correct that the divorce decree's notice requirement is ambiguous as applied to circumstances wherein Father's relocation resulted in the child residing closer to Mother, the question of whether Father's moves in Tennessee brought him closer to Mother presents a question of fact. The record on appeal contains no factual findings as to Father's address following his eviction, whether Father completed the move to the address he claimed to be "in the midst of" moving to, or the relative locations of Father's various residences. In its final order, the trial court considered whether Father had advised Mother of his current address before the proposed change or within 10 days of obtaining information about a new address, and it found Father had not. The proof in the record was that Father "did not provide and had not advised on his current address at the time of filing the contempt petition." Because of the deficiencies in the record that Father has provided this court, it is unclear whether Father actually argued to the trial court that the provision at issue was ambiguous or that his relocation was bringing the child's residence closer to Mother.

Father asserts numerous facts in his appellate brief for which he provides no citation

to the record. Nor is the record sufficient to allow for citation with regard to such facts, given that Father has failed to provide either a transcript or a Rule 24 statement of the evidence. Father asserts that he is living at a particular address, that the new address is north of his prior address, and that the "relocation resulted in the child residing closer to the non-relocating parent and did not interfere with [that parent's] ability to have visitation with the child." Additionally, he claims that "the relocation addressed in the criminal contempt petition references a move from an apartment complex to a larger townhouse in a gate[d] community closer to the non-relocating parent with the intent to continue to facilitate, not hinder, the relationship between the child and the non-relocating parent," and that the "relocation was done in the best interest of the child."

However, the "recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *In re M.R.*, No. M2007-02532-COA-R3-JV, 2008 WL 2331030, at *3 (Tenn. Ct. App. June 3, 2008) (citing *State v. Draper,* 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)); *Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012); *Flack v. McKinney*, No. W2009-02671-COA-R3-CV, 2011 WL 2650675, at *2 (Tenn. Ct. App. July 6, 2011). We cannot assume the truth of facts set forth only in an appellant's brief. *In re M.R.*, 2008 WL 2331030, at *3.

Father has not challenged any of the remaining elements of criminal contempt. Accordingly, given the deficiencies in the record presented and accompanying presumptions that this court applies given the absence of a transcript or Rule 24 Statement of Evidence, we affirm the trial court's criminal contempt finding.

V.

Mother seeks attorney's fees incurred in defending this appeal. Generally, in Tennessee, a party to a civil action may recover attorney's fees only if a contractual or statutory provision creates a right to recover attorney's fees or if a recognized exception to the general rule applies. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Here, Mother seeks attorney's fees based on Tennessee Code Annotated sections 36-5-103 and 27-1-122.

Tennessee Code Annotated section 36-5-103 provides a court with discretion to grant attorney's fees to a "prevailing party . . . in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order." Tenn. Code Ann. § 36-5-103(c).

Under Tennessee Code Annotated section 27-1-122, a court has discretion to grant attorney's fees where an appeal "was frivolous or taken solely for delay." Tenn. Code Ann. § 27-1-122. A frivolous appeal is one that is "utterly devoid of merit," *Combustion Eng'g,*

*Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or has "no reasonable chance of success," *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977).

In the exercise of our discretion in this case, we conclude that an award of attorney's fees on appeal is warranted. Father's argument that ambiguity as to the application of the court order to the circumstances of his case obviates his contempt is dependent upon resolution of a foundational factual question: whether his change of residence brought him closer to or further from Mother's residence in Michigan. In the absence of a closer move, Father's argument for ambiguity in application of the prior court order to his circumstances, which is the basis of his appeal, evaporates entirely. However, despite the factual nature of this dispute, Father failed to provide this court with a transcript. Father also failed to provide a Rule 24 statement of the evidence. Instead, without citation to any evidence that was actually presented to the trial court, Father declares in his appellate brief that his relocations within Tennessee brought him closer to Mother.

Some of the more common circumstances in which this court has found an appeal to be frivolous are cases in which the argument advanced on appeal was dependent upon the facts but where the appellant failed to provide a transcript or Rule 24 statement of the evidence. *See*, *e.g.*, *Diallo v. Diallo*, No. W2023-01513-COA-R3-CV, 2024 WL 4534624, at *3 (Tenn. Ct. App. Oct. 21, 2024); *Regions Bank v. Crants*, No. M2022-01314-COA-R3-CV, 2023 WL 3412476, at *3 (Tenn. Ct. App. May 12, 2023); *Cnty. of Sumner v. Kalbes*, No. M2020-01119-COA-R3-CV, 2021 WL 4192319, at *3 (Tenn. Ct. App. Sept. 15, 2021); *see also*, *e.g.*, *Williams v. Williams*, 286 S.W.3d 290, 297 (Tenn. Ct. App. 2008) ("An appeal in which the appellate court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record may be deemed frivolous."); *see*, *e.g.*, *Moritz v. Tulay*, No. E2013-01528-COA-R3-CV, 2014 WL 5306789, at *9 (Tenn. Ct. App. Oct. 17, 2014) ("We determine this appeal to be frivolous inasmuch as Mother provided no transcript or statement of the evidence from which we could review the propriety of the court's decision regarding modification. . . ."); *Linn v. Howard*, No. E2006-00024-COA-R3-CV, 2007 WL 208442, at *5 (Tenn. Ct. App. Jan. 26, 2007) ("[W]ithout a transcript or statement of the evidence, this appeal had no chance of success."); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989) (deeming an appeal frivolous where the appellant failed to provide a transcript or statement of the evidence). Those are the circumstances of the present case, and exercising our discretion, we conclude that an award of attorney's fees in connection with this appeal is warranted. Accordingly, we remand to the trial court so that it may make a determination as to reasonable attorney's fees to be awarded to Mother.

VI.

For the aforementioned reasons, we affirm the judgment of the Circuit Court for Davidson County. Costs of this appeal are taxed to the appellant, Zachary Ferrell, for

- 11 -

which execution may issue if necessary. The case is remanded for a determination of reasonable attorney's fees to be awarded to Mother and for such further proceedings as may be necessary and consistent with this opinion.


s/ Jeffrey Usman

JEFFREY USMAN, JUDGE
